Good morning, your honors, and may it please the court. My name is Hillary Smith, and I represent the petitioners, Mr. Mangidi Familia Miguel, his wife, and their three children. I respectfully request that three minutes of my time be reserved for rebuttal. Under the regulations, it was incumbent upon the government to demonstrate by a preponderance of the evidence that relocation was reasonable. That regulatory burden-shifting requirement was not applied here, and therefore remand is warranted. There are two scenarios in a relocation analysis in which the government bears the burden of proof. First is when the non-citizen establishes past persecution. But did the BIA actually say that Mr. Miguel would have to relocate? I thought they just said that he could remain safely outside of Cafunfo. I think in his home of Luanda, where he'd lived for 10 years. That statement by the BIA, we argue, implicitly incorporates a relocation analysis, and both the BIA and the immigration judge tied their negative, well-founded fear finding to a relocation analysis. But he was living there for 10 years. How was that relocation, relocating to your own home that you lived in for 10 years? He had lived in Luanda for 10 years prior to the harm occurring in Cafunfo, but he only lived there for two years in hiding during the COVID-19 pandemic, after the harm occurred, before he fled Angola. Can you clarify for me how long the police threats went on for? The police threats, it is my understanding that they went on against Mr. Miguel's employee, excuse me, for weeks after the harm took place on January 30th, 2021. And were they making threats towards Mr. Miguel throughout the two years that he was in hiding? They were not making threats to him directly while he was in hiding. But Mr. Miguel credibly testified that because his neighbors didn't know that he had returned to his home in Luanda, and because of the COVID-19 pandemic, he could not be for certain if the police were looking for him. But no direct threats to Mr. Miguel were given at that time. So the difficulty I have is, of course, the Supreme Court in Júlio Soriano made clear what the standard of review is now. And I can't find even any Ninth Circuit case that's close to the limited threats here, and then the one shooting incident. If I go through all these Ninth Circuit cases, there's repeated death threats, there's actual physical abuse, there is a relative being shot. You know, you just march through those. And here we have a situation where the record shows only these limited situations of threats. So how can that be past persecution under the substantial evidence standard? I agree that we have to analyze the past persecution under the substantial evidence standard. What our stronger argument that we're making that warrants remand is that because Mr. Miguel credibly testified that he feared also future harm at the hands of the police in Angola, he met his initial burden to then shift it to the government to show that relocation was in fact reasonable. That assignment of the burden of proof is not reviewed for substantial evidence. I think Urias-Oreana keeps that door open because that question wasn't explicitly answered. But because the assignment of the burden of proof is reviewed as a legal question, that gets de novo review. And Mr. Miguel carries the day on that argument. But the relocation issue wasn't raised before the BIA, was it? I would direct the court to the record at various places to argue that it was raised at the BIA. At the record on page 71, prior counsel preserved the argument in the notice of appeal itself at paragraph four. Additionally, while the regulation in question was not specifically cited in the administrative brief submitted by prior counsel, they did appropriately flag the legal error that occurred in the relocation analysis. That is in the record in the administrative brief at page 34. Can I ask you on the past persecution, prior counsel also conceded that there was no past persecution. I'm just looking at the hearing before the immigration judge. He says, Ms. McKenna, quote, it is, I don't believe that is past persecution. So how can we find that a reasonable fact finder would be compelled to find otherwise if Mr. Miguel's own lawyer didn't think that there was enough here for past persecution? There was not a single incident that was argued that would rise to the level of past persecution. The argument we're making on appeal is that the cumulative and all of the instances in the aggregate themselves rise to the level of past persecution and the judge didn't properly aggregate those incidents of harm and therefore no reasonable fact finder would have been able to agree. But turning back to the relocation analysis, Mr. Miguel does not have to establish that he suffered past persecution in order to have the burden shift to the government to prove that it would be reasonable for him to locate because there's- Can I ask you where the BIA says on appeal, the respondent argues the immigration judge erred in his past persecution findings contending that credible death threats combined with other forms of abuse compel a finding of past persecution. You don't think that is a consideration of cumulative effects? What more should they have said? After reading the decision of the immigration judge and the board of immigration appeals, there were some mischaracterizations of the harm that Mr. Miguel suffered. There was a characterization that he merely witnessed the shooting that occurred at the protest that he helped organize. However, he credibly testified that he was shot at and that people directly in front of him unfortunately dropped to the ground and were victims of that harm. And because there was that mischaracterization, there was not a proper aggregation of the harm that he suffered. So just to understand your argument, even assuming there was no past persecution, then of course he has the opportunity to say he has a well-founded fear of future persecution and the burden is on him to show that. Is that right? But you have now kind of transmogrified it into a relocation analysis. So would you explain your thinking and how that works in the statute in your view? Yes, certainly. If I could, just to read the statute I'm referring to, it's 8 CFR section 1208.13 subsection b3ii. It states that, quote, in cases in which the persecutor is a government or is government sponsored, it shall be presumed that internal relocation would not be reasonable unless the Department of Homeland Security establishes by a preponderance of the evidence that under all the circumstances, it would be reasonable for the applicant to relocate. Here, Mr. Miguel credibly testified that he feared future persecution from the police in Angola because they were the ones who had shot at him and had threatened his employee in the past. And so once he credibly establishes that, the burden then must shift to the government to prove that relocation. I just don't see the relocation really being argued directly because that would make almost every case a relocation case and not every case is a relocation case. So if what he's saying is, if you read the BIA decision, there's really no mention of that. They're basically saying here he is. We're not talking internal relocation. We're talking about, you know, actually returning to where he was, not whether he needs internal relocation, which is usually set out very clearly. So I guess I'm having a disconnect between what you're arguing and what the BIA determined. Because the immigration judge and the BIA, I think implicitly tied their findings that Mr. Miguel's fear of future persecution was not reasonable directly to his ability to live in Angola unharmed. They therefore engaged in an internal relocation analysis. And at that moment, the government should have borne the burden to prove that such relocation would have been reasonable. I guess I don't understand. He lives in the same house for 10 years in the capital of Angola. He did that. He only went every two to three months to work at his store. So he lived in the same house. I still am having a little difficulty understanding how you relocate to your own house. He lived there for 10 years before he left for the United States through Brazil and other countries. Yes, 10 years prior to the harm that occurred. And then because the harm escalated and his visibility as a party became more known due to his activities in Cufunfo, that was the only reasonable place that he could go to hide. He lived. That's where his wife and kids were, correct? In Luanda, in the capital, in the same address. I was looking to see if maybe he even moved houses during the 10 years in Luanda and it didn't. The record says it's the same house. Yes. And he did have to sneak back into his house in the middle of the night and only his excuse me, only his wife and his children knew that he was there. He was living in complete hiding for those two years and that this court has said that that can't be considered to be safe relocation if you have to remain in hiding during that time. Have threats been made towards Mr. Miguel's remaining family members in Angola or towards his wife's family members? I don't believe since he's left, no. I'm just having trouble seeing where there was a preservation of the internal relocation issue. Record 34 and 71, it seems to say the petitioner was forced to suppress his political opinion. I'm not quite sure what you're looking at to support your internal relocation. I think in the heading on page 34 is where I was looking is or I apologize. I might have misquoted on page 20 of the administrative record. The heading says the administrative judge committed legal error in finding that respondent could safely reside in Angola by suppressing his political opinion. And when we're talking about Mr. Miguel residing in Angola, it was after he relocated from the place where the harm occurred. And I do realize I'm coming up on my rebuttal time, but I'm happy to entertain more questions if you have them. Fine. Thank you. Thank you. We just respectfully request that this court remand in order to place the proper burden of proof for the relocation argument on the government. Good morning. May it please the court. Alexa Perlmutter on behalf of the Attorney General. The court should deny this petition for review. The only question in this petition is under the standard recently clarified by the Supreme Court, whether any reasonable adjudicator could find how the agency did here. And the answer is yes. I'll first briefly discuss the past persecution finding and then move on to the fear of future persecution. Here, neither petitioner nor anyone in his family was ever physically harmed, directly threatened, or witnessed any threats. Rather, over the course of a 13-day period in 2021, petitioner assisted with a protest that was broken up by shots fired by the police. And the police came to his store in Cafunfo on four occasions within that 13-day period. Are you arguing that Mr. Miguel can't challenge the agency's finding of no past persecution because of his lawyer's concession before the IJ? Although his lawyer did make that concession before the IJ, the immigration judge then went on to analyze past persecution on the merits. And so I think here at this stage, when the immigration judge and the board both analyzed it on the merits, that is what I'm here to defend that was briefed before the court. But it's certainly notable that petitioner's own counsel did not believe that there was past persecution in this case. I think under the substantial evidence standard, there is clearly no past persecution in this case. If we look at cases like Sharma, where the petitioner, again, went to a protest, he was then approached at his job, beaten, detained for overnight, beaten overnight, and his business was ruined. The court found no past persecution in that case. Why isn't the cumulative effect of the police shooting, where people were killed and injured, destruction of Mr. Miguel's business and repeated death threats towards him, sufficient to establish that he experienced past persecution or a well-founded fear of future persecution? Well, Your Honor, persecution is an extreme concept, and that the police fired shots at the protest that petitioner was at does not indicate that he was personally targeted for that conduct. With regard to the threats, the record supports that his employee was- Well, why were people shot at? I mean, wasn't it the government, the police thought it was a rally, a political rally, and so shot at the folks? Can you help me understand the reason for the shooting? Petitioner stated that the government and the police were aware of this protest, were aware of meetings leading up to the protest, issued a permit for the protest. The Department of State report that discusses this protest on page 203 of the record references that 300 individuals armed with sticks, machetes, and firearms tried to forcibly enter a police station, which resulted in six deaths and injuries. This was organized by a separate separatist movement that petitioner was not a part of, and his group of UNITA was there assisting. So the Department of State report suggests that there may have been some violence at this protest. But again, the question is whether the treatment that petitioner himself experienced rises to the level of past persecution. And the IJ found him credible in what he said in terms of the incident that day, correct? That's correct, but the Supreme Court has made clear in Ming Dai that credibility is a distinct question as to whether an alien has met his burden of proof to show that he experienced conduct that rises to the level of past persecution. And so here, although the immigration judge accepted that his testimony was credible, that does not equate to him meeting his burden of proof. The fact that he was never, no one in his family was directly threatened. The record on pages 145 makes clear that it was the employee who was asked repeatedly about petitioner's location, and then it was the police issued threats to the employee. And petitioner stated he never heard those threats firsthand. Those were communicated to him by third parties. By the time he heard about them, he was back home in Lawanda. And so the agency reasonably concluded with, you know, in light of the Sharma factors that this court has articulated, that the police's actions to petitioner, it is not his employee who's a petitioner in this case, but to petitioner did not amount to the extreme conduct required for past persecution. And counsel, what what do we do with the fact that the petitioner here was in hiding for two years and suppressed his political opinion? How does that factor into our review? I mean, could that illustrate that he has a well-founded fear of future persecution and would not be able to continue his political activities if he returned to Angola? No, Your Honor. The well-founded fear inquiry is whether it is objectively reasonable that he has a well-founded fear of persecution. It's about the objective reasonableness of that fear. Here, given that there was no indication of any government interest in petitioner after 13 days, after February 12, 2021, which was 13 days after this protest, that he decided to stay in his home during the pandemic does not compel the conclusion that he has an objectively reasonable fear of persecution. Additionally, I want to ask and continue the questioning I started with his counsel, and that was on the well-founded fear of future persecution. So it's just focusing as you're talking about the need for the fear to be objectively reasonable. But counsel says that because the analysis of the BIA presumes that he can simply locate back to the country, that we've changed somewhat from a well-founded fear of future persecution, to which he might have the burden, to the government bearing the burden because we're now in a relocation analysis. Would you address that? Yes, I'm happy to. Notwithstanding that that argument was not preserved before the agency, I will address it on the merits. That is a mischaracterization of the agency's decision here, and also a mischaracterization of this burden-shifting requirement. As the court explained in Malkin-Owen, quote, only, quote, where the applicant has established a well-founded fear of future persecution at the hands of the government does a rebuttable presumption arise that the threat exists nationwide. So it is petitioner's burden to first establish a well-founded fear somewhere in Angola. The agency found that he did not establish a well-founded fear anywhere in Angola, and therefore had no need to, and indeed did not reach the question of whether he would have to internally relocate. We can look at the immigration judge's decision on page 79 of the record, where the immigration judge discusses that he could return to Luanda, where he had been living for over 10 years, where his family had been living, and resume his activity as he had not had any harm there. But there's no evidence in the record that he could resume his political activity even in Luanda. Well, that's just pure speculation, isn't it? Because he was in hiding for the two years. There's nothing in the record that shows that after the protest at Cafunfo that Mr. Miguel engaged in political activity safely. That's correct. But what the record does establish, and this is, for example, on page 362 of the record, a news article notes that tensions were heightened, quote, for days and weeks in the much less compel that he would be unable to mobilize in the district, again, as he had been doing for a decade prior in Luanda, facing no harm. What the immigration judge also found was that wherever he resumes his political activity, he might be briefly detained and then released. This is page 243 of the record, where it discusses what routinely occurs to protesters who are detained, and they're often released after a few hours. Additionally, the Department of State report on page 212 to 213 states that individuals can criticize the government policies without fear of direct reprisals. So there's certainly no evidence compelling the conclusion that he has a well-founded fear in Angola, and therefore he did not meet his threshold requirement to trigger that burden shifting. That, you know, because he does fear a state actor, if he had shown a well-founded fear or if he had established past persecution to trigger that presumption, you know, would have kicked in, but that did not happen here. And so therefore, for the agency or for this court to reach that question, petitioner first has to meet the heavy burden of pointing to evidence. But, you know, I'm looking at, I assume, the same human rights report that the IJ looked at, and it talks about beatings and other abuses on the way to and inside police stations during interrogations. There's a concession by the government that members of the security forces used excessive force when apprehending individuals. Well, there's no indication that a petitioner who is not a high-level activist, there is information in the record about the leader of the separatist movement who was arrested after this protest and sentenced to a lengthy prison term. Petitioner was a district mobilizer on a local level, and he did that unharmed for over 10 years. And there's no evidence that he could not return to that role with UNITA, you know, separate from this other separatist movement that he was not a part of, and continue with that role. And again, this issue is reviewed under the deferential substantial evidence standard, and only if petitioner points to evidence, only if no reasonable fact finder could rule as the agency did here, would the court even reach the question of relocation or the burdens in that case. But because there was no indication of any interest in petitioner after the 13 days following this protest, the country conditioned support that there was a short increase in activity, in police activity following the protest, but that it does not support that that interest in him continued beyond those 13 days, that it exists now, or that when petitioner returns, his experience would be any different than it was in the over 10 years that he held this position without experiencing any harm, which he testified on page 126, that he was not harmed at all attending demonstrations for 10 years in Luanda. If the court has no further questions, we're happy to submit on our briefs. Thank you. Thank you.  Opposing counsel made an argument that petitioner Mr. McGill, in this case, would have needed to first establish an objectively reasonable fear of future persecution before the burden shifting to the government happened on internal relocation. That is a mischaracterization because the regulations do not state that that first has to happen. If we look at the regulations for past persecution at 1208.13 B1, the burden shifting does happen explicitly after a petitioner establishes they were subject to past persecution going if they weren't subject to past persecution and they're still trying to find a well-founded fear of future persecution. Yes, and the regulations for well-founded fear of future persecution are different. There is no explicit finding that the petitioner first has to establish an objectively reasonable fear of burden shifts. This court made that holding in Fockery v. Casey. This court stated that because the applicant in that case testified he feared persecution at the hands of the government as Mr. McGill did in this case, he gained the benefit of the presumption that the threat of persecution existed nationwide and that relocation was therefore unreasonable. This court held that whether the government rebutted this presumption by a preponderance of the evidence was a question for the agency on remand and that is the exact issue that is happening here. Mr. McGill credibly testified that he feared harm from the police in Angola and then the immigration judge and the Board of Immigration Appeals kept the burden on him and made an implicit relocation analysis in finding that he could not, in finding that he could relocate in Angola. So let me just understand your argument, either assuming no past persecution but you have a fear, a well-founded fear of future persecution to which you need to establish that the fear is objectively reasonable, correct? So Mr. McGill could do that. Okay, well let's just get that far. Yes. If he could show it was objectively reasonable, although I know here the BIA found otherwise, then you're saying at that point that the relocation analysis kicks in. I frame it a little differently in that, while not presented in this case, there may first be an issue of an evidentiary burden or a burden of production in which Mr. McGill needed to prove that he feared harm at the hands of the government. Once you do that, then the burden shifts to the government to prove that relocation is therefore reasonable because he's granted the benefit that it would be unreasonable because of that. Is there a case that you're relying on that says that or what are you looking at that says that? First, I'm just looking at the clear language of the regulation and how it's laid out and how it was chosen to be laid out and then also looking at Fakhri v Mukasey from this court. I, looking through the record, I am not certain that it was quoted in any of the briefing but it came up upon my research for this case and I would just like to point the court to that case for this contention. Thank you. In that case, you might just want to file a 28-J letter with that citation. I would be happy to, yes. Thank you. Thank you, your honors. Thank you, Ms. Smith. Thank you, Ms. Perlmutter. Appreciate the oral argument presentations here today. I don't see Ms. Perlmutter anymore but if you're there, thank you very much. The case, okay, the case of Miguel v. Todd Blanche is now submitted and we are adjourned. Thank you very much.
judges: MURGUIA, McKEOWN, KOH